# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| SANDY JONES, | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 6:13-cv-01203-JEO |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Sandy Jones ("Plaintiff" or "Jones") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Social Security Income ("SSI"). (Doc. 1).[1] Jones timely pursued and exhausted her administrative remedies. The case is therefore ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and DIB and for SSI on

---

[1] References herein to "Doc. ___" are to the electronic document numbers assigned by the Clerk of the Court and located at the top of each document.

March 4, 2010, alleging disability beginning January 5, 2007. (R. 103-04, 128-29, 137-40).[2] Her claims were denied initially. (*Id*. at 105-019, 122). Thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 28, 2011. (R. 36). Plaintiff was represented by counsel at the hearing. (*Id*.) Plaintiff, through her counsel, amended her alleged onset date to June 30, 2007. (*Id*. at 21, 37). The ALJ denied Plaintiff's applications. (R. at 18-29).

Plaintiff requested the Appeals Council to review the ALJ's decision. The Appeals Council declined Plaintiff's request for review. (R. 1-7, 17). Therefore, the ALJ's decision represents the final decision of the Commissioner. (*Id*.) Plaintiff thereafter timely filed this action for judicial review under 42 U.S.C. § 405(g), asserting that the findings of the Commissioner are not based upon substantial evidence and that improper legal standards were applied. (Doc. 1).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its]

---

[2]Citations to "R. ___" are to the page of the administrative record, which is encompassed within Docs. 5-1 to 5-9.

judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). As just noted, conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No ... presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A.     The Facts**

    **1.     Plaintiff's Background**

At the time of the ALJ's decision in this case, Plaintiff was forty-two years old with a marginal education having left school after the eighth grade.[3] (R. 63). She has past work as a waitress at Waffle House in 1989. (*Id*. 41, 63). She initially reported disability due to post-traumatic stress disorder and back and knee problems. (R. 202).

Plaintiff testified at her administrative hearing that she is an unmarried, homeless woman living with a friend in Carbon Hill, Alabama in an extra bedroom. (R. 38-39). She is 5'11" and

---

[3]Plaintiff testified, however, that she attended high school. (R. 49-50).

weighs 258 pounds, having gained weight purportedly due to her depression. She also stated that she was being treated for depression and post-traumatic stress disorder. (R. 39-40). She further reported that she suffers from back pain, swollen feet and hands, and occasional severe headaches. (R 45-46). She stated that she could stand for only three minutes before needing to sit. (R. 46). She further stated she could walk only up to three feet before needing to sit down due to back pain. (R. 46-47). She further stated that her primary impediment to working is a lack of concentration. (R. 47). She also reported that she has auditory and visual hallucinations. (R. 44). She avoids large crowds because she believes people are "hollering" at her. (R. 48). She attributes her PTSD and depression to both of her children being taken away from her by their stepfather in the 1990s. (R. 40). Her depression was exacerbated by the death of her mother, also in the 1990s. (*Id*.)

She believes that if she went back to work, her biggest problem would be an inability to concentrate. (R. 47). She reports having been diagnosed with attention deficit hyperactivity disorder ("ADHD"). (*Id*.) She also reports doing little during the day. She takes short naps due to her depression. (R. 55). She does not cook or shop. (R. 55). She does not exercise or get out for physical activity. (R. 56).

    **2.**    **ALJ Findings**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since June 30, 2007, the alleged onset date. (R. 23). She has severe physical impairments of PTSD and a learning disorder. (*Id*.) However, he also found that Plaintiff had no impairment or combination of impairments that met or medically equaled any listing. (*Id*.) He further found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional

levels. (R. 25). With regard to her mental limitations, he found that Plaintiff could concentrate, persist, and work at a pace to do simple, routine, and repetitive tasks at a "level three" reasoning pursuant to the Dictionary of Occupational Titles for two hour periods in an eight hour workday. (*Id*.) He further found that she could occasionally interact with the public and could interact appropriately with coworkers and supervisors in a non-rapid, non-production stable routine setting. (*Id*.) He further found that she was not able to perform her past relevant work as a waitress. (R. 27). However, he determined there was other work that she could perform such as hospital food service worker, hand packer, and industrial cleaner. (R. 28). Accordingly, he concluded she was not disabled from the onset date through the date of his decision. (R. 29).

### 3. Sequential Evaluation

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability, DIB, and/or SSI. *See* 20 C.F.R. § 404.1520(a)(1)-(2); 20 C.F.R. § 416.920(a)(1)-(2); *Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[An individual shall be considered to be disabled for purposes of [determining eligibility for DIB and SSI benefits] if [she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(1); *see also* 42 U.S.C. § 416(I)(1); 42 U.S.C. § 423(d)(1)(A).

First, Plaintiff must prove that she has not engaged in substantial gainful activity. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.1999). Second, she must prove that she has a severe impairment or combination of impairments. *See id.* Third, she must show that the

impairment or combination of impairments matches those contained in a list of impairments. *See id*. If she cannot satisfy the third step, she must proceed to the fourth step and show that she is unable to perform her past relevant work. *See id*. If she succeeds at this step, the burden shifts at the fifth step to the Commissioner to show that there is other work Plaintiff can perform. *See id*. If the Commissioner meets her burden at the fifth step, Plaintiff must prove that she is unable to perform that work. *See id*; *accord Dixon v. Barnhart*, 151 F. App'x 810, 812 (11th Cir. 2005).

At the second step, the ALJ considers the medical severity of the applicant's impairments, and if he finds that an applicant does not have a "severe" impairment or combination of impairments, he should conclude that there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). Step two has been described "as a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)." *Tuggerson-Brown v. Comm'r of Soc. Sec*, 2014 WL 3643790, *1 (11th Cir. July 14, 2014). The Eleventh Circuit has "also described step two as designed to screen out groundless claims, where the applicant's medical problems could not possibly prevent her from working." *Id*. (citing *Stratton v. Bowen*, 827 F.2d 1447, 1452 & n. 9 (11th Cir. 1987). "To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant had 'at least one' severe impairment. *Id*. (citing *Jamison*, 814 F.2d at 588).

**B.     Analysis**

Plaintiff argues the ALJ erred in that he (1) misconstrued the durational requirement in finding that Plaintiff's bipolar disorder and adult attention deficit disorder ("ADD") were not severe; (2) refused to consider her bipolar and ADD disorders as part of her SSI claim; and (3) improperly rejected the findings of Alan Blotcky, Ph. D. (Doc. 11 at 9-11). Each will be

addressed below.  The first two challenges will be considered together and the third will be addressed separately.

### 1. Durational Requirement and Bipolar Disorder and ADD

Plaintiff states that a registered nurse at the Alabama Mental Health Center diagnosed her as suffering from bipolar disorder and ADD on February 20, 20111.  (Doc. 11 at 10).  She then argues that to the extent the ALJ considered these impairments, he improperly found that they do not meet the 12-month rule and are, therefore, non-severe.  (*Id*.)  The Commissioner retorts that the ALJ properly found that these impairments were not severe and that Plaintiff has not properly characterized his finding.  (Doc. 12 at 9-10).

Plaintiff bears the burden of demonstrating that she has a severe impairment or combination of impairments.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  A severe impairment is one that significantly limits her physical or mental ability to accomplish basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(c); SSR 96-3p, 1996 WL 374181, at *1 (SSA).  To be found to be disabled under the second step of the evaluation process, Plaintiff must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509(a), 404.1520(a)(4)(ii), 416.905(a), 416.909, 416.920(a)(4)(ii); *see also* SSR 96-3p, 1996 WL 374181, at *1 (SSA).

The court disagrees with Plaintiff's conclusion that the ALJ misconstrued the durational requirement in finding that her bipolar disorder and ADD were not severe.  In order to be disabled, Plaintiff must be unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff asserts that the ALJ misconstrued the 12-month requirement when he stated "that [she could] not qualify for disability, even from February 20, 2011, forward, unless her disability ... actually lasted for a full 12 months prior to the decision." (Doc. 11 at 10). To assess this contention, it is necessary to place the finding in proper context. The ALJ stated:

> Treatment records from Alabama Mental Health Center dated July 2010 to May 2011 show the claimant reporting she was being treated for a bipolar disorder and posttraumatic stress disorder in Georgia and South Carolina. There is no indication in those records the claimant was diagnosed with a bipolar disorder. The claimant was being treated prior to her amended alleged onset date for depression in Georgia and was not diagnosed with a bipolar disorder. Mental Health treatment records from Greenville Mental Health in South Carolina shows (sic) the claimant was being treated for posttraumatic stress disorder only.
>
> The claimant was first diagnosed with bipolar disorder and adult attention deficit disorder February 20, 2011, by an RN at the Alabama Mental Health Center, apparently based on the claimant's own self-report and was being treated for the same. Even if she is found to have a bipolar disorder and adult attention deficit disorder, these are considered new impairments and do not meet the 12 month rule requirement and are therefore nonsevere....

(R. 27).

It is evident from the foregoing quote that Plaintiff's characterization of the ALJ's finding is not correct. There is no finding or language in the opinion where the ALJ stated that a claimant, particularly Plaintiff, cannot qualify for disability unless the disability "has actually lasted for a full 12 months prior to the decision." (Doc. 10 at 10). The foregoing quote also demonstrates that the ALJ applied the proper interpretation in his findings and conclusion.

As a part of this claim, Plaintiff also argues that she was prejudiced by the ALJ's refusal to consider her bipolar and ADD "evidence at all." (Doc. 10 at 11). The Commissioner retorts

that this argument lacks merit. (Doc. 12 at 11). The undersigned agrees.

As noted immediately above, the ALJ found that Plaintiff was first diagnosed with bipolar disorder and ADD on February 20, 2011. (R. 27, 382, 385). However, the record further shows that Plaintiff was diagnosed with a bipolar disorder on July 7, 2010, and ADD on August 27, 2010, as a part of her initial screening at the Northwest Alabama Mental Health Center on July 7, 2010. ("NAMHC"). (R. 395). The diagnosis was premised, at least in part, on her report of a bipolar disorder, PTSD and ADD treatment in South Carolina and Georgia. (R. 407). Plaintiff returned to NAMHC in February 2011, seeking additional medication. She stated she had not taken her medication for three months. She reported she was "stuck in S. Carolina." (R. 384). She went there to visit for the holidays and did not have the money to travel home. She returned to Alabama on February 5, 2011. (*Id*.) She reported she was "'real bitchy,' has 'mood swings', has 'aches [and] pains,' and her 'whole body hurts.'" (*Id*.) She also reported that "[w]hile she was on meds, she was doing 'better.'" (*Id*. at 384). Her medication was continued and she was scheduled for follow-up. Her follow-up visits in March and April 2011 were unremarkable. It was noted, however, in her April 2, 2011, visit that she reported "her depression [was] worse and she [was] irritable." (R. 379). She also mentioned having bad nightmares during the last three or four days, resulting in her not sleeping well. (*Id*.) These facts support rather than dispute the ALJ's determination that these conditions do not constitute severe impairments.

Accepting Plaintiff's bipolar and ADD diagnoses as impairments, she is still not entitled to relief. There is no medical or other evidence that these impairments significantly limited her ability to do basic work during a consecutive twelve month period or that they were expected to

be significantly limiting during a consecutive twelve month period. Stated another way, the determination of the ALJ is supported by the substantial evidence in the record.

### 2. Findings of Dr. Blotcky

Plaintiff next argues that the ALJ "wrongly used his objections to Dr. Blotcky's report as an excuse not to take [her] intellectual and emotional challenges seriously at all." (Doc. 10 at 11). Blotcky performed a Wechsler Adult Intelligence Scale test on Plaintiff showing a full IQ score of 57, which is in the mildly retarded range of intellectual abilities. (R. 25, 372). In contrast to this, the ALJ noted that the remainder of the record showed that while Plaintiff "was diagnosed with a learning disability in reading and math; she was in the regular classroom 85% of the time; [Plaintiff's] lowest IQ in school was 76 and she was never diagnosed with mental retardation...."[4] (*Id*.) He further stated that Blotcky's mental residual function capacity for Plaintiff was "inconsistent with [Plaintiff's] work history, which shows she had substantial gainful activity earnings as a waitress in 1998 and 1999 ... and her testimony that she took and passed the written exam and a driving test for her driver's license."[5] (*Id*. (citations omitted)). Finally, he noted that there was nothing in the record of Plaintiff "having an incident(s) that would cause her to have such a significant decline in cognitive functioning...." (*Id*.) He concluded that Blotcky's findings "are an outlier and not supported by the longitudinal record, her past work and adaptive functioning." (*Id*.) The ALJ then noted that the report "was prepared at the attorney's instigation, is a one-time examination, with checkbox forms not supported by

---

[4]She also had other scores of 92, 87 & 85. (R. 24).

[5]The record reveals that Plaintiff also worked during 2010 pulling car parts. She was terminated, however, because she was too slow. (R. 53). Additionally, with regard to the driving test, the record shows that she had to take the examination three times to pass. (R. 51-52). While these facts were not noted in the ALJ's decision, they do not alter this court's determination that the decision should be affirmed.

the ... record or even some of his own findings." (*Id.*)  Accordingly, the ALJ decided to reject the results.

The applicable standard regarding alleged bias was recently articulated by United States District Judge R. David Proctor:

> A presumption of honesty and integrity exists with respect to those who serve as adjudicators for administrative agencies. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).  The burden of overcoming this presumption rests with the party making the assertion of bias. *See McClure*, 456 U.S. at 196.  The presumption can be overcome by "a showing of conflict of interest or some other specific reason for disqualification." *Id.* at 195.  In order to be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

*Parker v. Colvin*, 2014 WL 3889474 (N.D. Ala. August 7, 2014).  The only basis for Plaintiff's allegation that the ALJ was biased against Blotcky or Plaintiff's counsel was the comment that the "report was 'instigated' by the claimant's lawyer." (Doc. 11 at 11).  That is it.  Counsel fails to site anything else in the record and directs the court to no other action that even suggests the ALJ was biased or that Plaintiff did not receive individualized consideration.  There is nothing untoward about the ALJ's assessment.  He stated that Blotcky was a one-time examiner, and that his report was inconsistent with the longitudinal record and was internally inconsistent.  (R. 25). Plaintiff's counsel has offered nothing that challenges these conclusions.  The comment that the report was prepared at counsel's instigation appears to be factually correct, and certainly does not demonstrate the requisite bias for relief.[6]

---

[6] Blotcky's opinion, if credited, would be significant in that if the impairments noted therein were fully credited, they could have impacted the vocational expert's testimony concerning her ability to work.  (R. 66-69).

### 3.     Substantial Evidence

Finally, the court finds that the decision of the ALJ is supported by substantial evidence. To the extent the case is a claim for DIB, Plaintiff has not shown that she was disabled during her insured period. To the extent the case is a claim for SSI, she has not shown that she was disabled during the relevant period for the reasons discussed above.

## IV. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner is due to be **AFFIRMED**. An appropriate order will be entered separately.

**DONE**, this the 25th day of August, 2014.

_/s/ John E. Ott_
**JOHN E. OTT**
Chief United States Magistrate Judge